## UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MARTIN INAGACIO RAMIREZ-MARTINEZ,** Individually. | § § § § | **CIVIL ACTION NO.5:25-CV-997** |
| | § | **COMPLAINT FOR DAMAGES** |
| *Plaintiff,* | § § | 1. *42 U. S, C, sec. 19 83,et seq* |
| *v.* | § § § | 2. *8th Amendment United States Constitution* |
| | § | 3. *Fourteenth Amendment to United States of the due process clause* |
| **BEXAR COUNTY, TEXAS,** | § § | 4. **Jury Trial Demanded pursuant to Fed R.** |
| *Defendant.* | § § § | **Civ. P. 38 (b)** |

## PLAINTIFF'S ORIGINAL COMPLAINT

## TO THE HONORABLE UNITED STATES DISTRICT COURT:

Martin Inagacio Ramirez Martinez, herein after referring to as Plaintiff, files this. original

complaint against Bexar County, Texas, and the States with the following:

I.
## All Parties

Plaintiff Martin Martinez's is a natural person who resides and is domiciled in Mexico. Plaintiff sues his individual capacity and seeks all damages. Available to him as a result of the assault his suffered while in the custody of the Bexar County Detention center "jail".

## II

### Service

1- Bexar County may be served with process pursuant to Federal Rule of Civil Procedure 4(G)(2) by serving its chief executive officer, Honorable County Judge Peter Sakai, at 101 W. Nueva, 10th Floor, San Antonio, Texas 78205, or wherever Honorable County Judge Peter Sakai may be found. Service on such person is also consistent with the manner prescribed by Texas law for serving a summons or like process on a County as a Defendant, as set forth in Texas Civil Practice and Remedies Code Section 17.024(a).

## III

### Jurisdiction and Venue

1- The Court has original subject matter jurisdiction over this lawsuit. according to 28 U.S.C. § 1331 and 1343(4), because this suit presents a federal question and seeks relief pursuant to federal statute(s) providing for the protection of civil rights. This suit arises under the United States Constitution. and 42 U.S.C. § 1983. The Court has personal jurisdiction over the County because it is a Texas County. Venue is proper in the San Antonio Division of the United States District Court for the Western District of Texas, pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events or

omissions giving rise to claims in this lawsuit occurred in Bexar County, which is in the San Antonio Division of the United States District Court for the Western District of Texas.

## IV

### Factual Allegations

1- Plaintiff provides in factual allegations sections below the general substance of certain factual allegations. Plaintiff does not intend that those. sections provide in detail, or necessarily in chronological order, any, or allegations. Rather, Plaintiff intends that those sections provide Defendant sufficient fair notice of the general nature and substance of Plaintiff's allegations and further demonstrate that Plaintiff's claims have facial plausibility. Whenever Plaintiff pleas factual allegations "upon information and belief," Plaintiff is pleading that the specified factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Moreover, where the Plaintiff quotes a document, conversation, or recording verbatim, or provide a person's name, the Plaintiff has done his best to do so accurately and without any typographical errors. However, some typographical errors may still exist, and when applying to a name, the name might be spelled phonetically.

2- The Plaintiff asserts claims based on the conditions of confinement. Conditions of confinement claims require no deliberate indifference on behalf of a governmental entity or governmental actor. In the alternative, the Plaintiff pleas facts which give rise to episodic acts and/or omissions claims. Regardless, pursuant to United States Supreme Court authority, Plaintiff need not assert in

these pleading specific constitutional claims but rather must merely plea facts which plausibly give rise to constitutional claims. Plaintiffs thus ask that the court apply the correct legal theory or theories to the facts pled.

3- The Plaintiff is not pleading his "best case" and will only be able to do so after conducting discovery. Plaintiff does not intend to "stand" on this pleading but will seek leave to amend as further facts are developed, or in the event any court determines that Plaintiff's live pleading is deficient in any manner.

V

## Cause Of Action: Assault in the Bexar County Jail;Violation of the Eight Amendment.

1. The Plaintiff incorporates each of the paragraphs above as if fully incorporated and fully stated herein. Plaintiff suffered the assault on or about August 27th, 2023, as a result of being incarcerated in the Bexar County jail. He was assaulted by inmates, known or unknown, while he was in his jail cell. The county's policies, practices, and/or customs caused, were proximate causes, or were producing causes and were moving forces behind Mr. Martinez's suffering and permanent injuries and all other damages referenced in this complaint. This section of the complaint provides only with some material facts related to Mr. Martinez's suffering and injuries. The plaintiff will set forth other material facts related to his suffering and personal injuries in other portions of this complaint.

2  Mr. Martinez's was Assaulted inmates while he was incarcerated in a Bexar County jail holding cell. The inmates entered his cell through an open cell door and assaulted Mr. Martinez's and injured him.

3   The plaintiff maintains that the holding cell door was open at times of the assaults. The detention guards on duty during the time of the assault failed to prevent the incident, neglecting their duty to supervise, care for, and ensure the safety of the Plaintiff. As a result, the plaintiff sustained serious injuries directly from these assaults. The detention Guards failed to secure the Plaintiff cell by keeping it closed while he was asleep, and or opened the cell door allowing the inmates to assault the plaintiff thereby joining and participating in the assault of the plaintiff.

4   The detention Guards failed to provide medical treatment to the Plaintiff, well aware of his needed condition for medical care after the assault.

5   Regardless, as indicated above, there was no surveillance either by video or in person, and Mr. Martinez's laid in his cell severely injured without any medical treatment for a considerable long time.

6   Plaintiff believes that the results of any and all reports will probably be obtained through discovery.

## VI

## CAUSE OF ACTION – VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

### (Monell Claim –42 U.S.C. § 1983)

1. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

2. At all relevant times, Plaintiff was a pretrial detainee held at the Bexar County Detention Center, operated by Defendant Bexar County Texas ,a political subdivision

of the State of Texas.

3. On or about August 27th 2023, fellow inmates violently assaulted Plaintiff while in custody of the detention center. The assault caused visible and substantial injuries, including bruised ribs, and injuries to his lower back and head.

4. Defendant County and the Detention Center, through their customs, policies, and practices, exhibited deliberate indifference to Plaintiff's right to be secure and protected from assaults ,but actually participated in allowing access to the plaintiff .Defendant County and Detention Center failed to provide adequate medical care as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

5. Under Monell v. Department of Social Services, *436 U.S. 658 (1978),* a local government may be held liable under 42 U.S.C. § 1983 where an official policy or widespread practice is the moving force behind the constitutional violation.

6. On information and belief, Defendant Bexar County had a custom or policy of failing to properly train and supervise detention officers regarding the medical needs of injured detainees, including the obligation to promptly seek emergency care following visible trauma.

7. Defendant County also maintained a custom of tolerating or failing to correct a widespread pattern of:(a) Failing to ensure prompt medical attention for detainees suffering serious injuries; (b) Allowing prolonged delays in treatment despite observable symptoms of medical distress; (c) Failing to investigate or discipline staff responsible for medical neglect of detainees;(d) allowing the assaulting inmates access to the detainees by opening their cell doors.

8. The deliberate inaction of the detention officers on duty, and the systemic failure of the detention center reflect an unconstitutional policy, practice, or custom of

deliberate indifference to the health and safety of detainees.

9. This conduct violates Plaintiff's rights under the Fourteenth Amendment's Due Process Clause, which protects pretrial detainees from deliberate indifference to serious assaults while in custody of the Bexar County detention center. See ***Kingsley v. Hendrickson, 576 U.S. 389 (2015); Darnell v. Pineiro, 849 F.3d 17 (2d Cir. 2017).***

10. As a direct and proximate result of the Defendants' acts and omissions, Plaintiff suffered serve physical pain, emotional distress, permanent injury, and loss of bodily functions.

11. Plaintiff seeks compensatory damages, punitive damages against appropriate individual defendants, and all other relief deemed just and proper under 42 U.S.C.§1983.

## VII

### *Monell v. Department of Soc. Svcs.*, 436. U.S. 658

Bexar County acted or failed to act at all relevant times through its employees, agents, representatives, jailers, and/or chief policymakers, all of whom acted "under color of state law", at all relevant times, and is liable for such actions and/or failure to act to the extent allowed by law (including but not necessarily limited to law applicable to claims pursuant to 42 U.S.C. § 1983), and the 8th Amendment and 14th Amendment due process clause of the United States Constitution.

Bexar County's policies, practices, and/or customs were moving forces. Behind, and caused, were proximate causes of, and were producing. Causes of constitutional violations, under the color of law and resulting damages referenced in this pleading.

The Plaintiff has set forth in this section of the pleading additional facts and allegations supporting liability claims against County pursuant to *Monell v. Department of Soc. Svcs., 436. U.S. 658 (1978).* A local Government or municipality can be held liable under 42.U.S.C. sec 1983 for constitutional violations, if the violation resulted from an official policy, custom or practice. The plaintiff does not need to show the policy was explicitly written; it can be inferred from a pattern of conduct or a failure to act. See: *City of Canton v.Harris, 489 U.S. 378 (1989):* Established that failure to train can form the basis of *Monell* liability if it amounts to deliberate indifference. Plaintiff' intends that all facts asserted in this pleading relating to policies, practices, and/or customs of County support such *Monell* liability claims, and not just facts and allegations set forth in this section. Even in absence of a formal policy, a widespread practice or custom that is so persistent and well-settled that it constitutes a de facto policy. *In Canton v. Harris ibid.* For example, a pattern of ignoring inmate safety concerns or failing to investigate prior assaults. A custom may be shown to exist where a pattern exists of similar incidents. Actual or *constructive* knowledge of the policy or custom on the part of a policy level of officials is sufficient to support imposition of *Monell* liability on defendant Bexar County. The policies, practices, and/or customs alleged in this pleading, individually and/or working together, and whether supporting episodic acts and omission and/or conditions of confinement claims, were moving forces behind and caused the constitutional violations, and injuries, referenced herein. See: *Board of County Commissioners v. Brown, 520 U.S. 397 (1997):*wherein it stated that a de facto policy stated which shows a pattern of ignoring inmate safety concerns is the moving force behind all the constitutional violations herein made the basis of this suit. Additionally, See: *Farmer v . Brennan, 511 U.S. 825 (1994):* That held that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm to inmates. These

policies, practices, and customs are presented individually and alternatively. Bexar County knew, when County incarcerated the plaintiff, that its personnel, policies, practices, and/or customs were such that it could not meet its constitutional obligations to provide medical and failed to prevent a pattern of inmate- on -inmate assaults resulting from the Bexar County's unconstitutional policies, customs, and practices, or its failure to act despite known risks, and that deliberate indifference was the moving force behind the plaintiff's injury and failure to protect, the Plaintiff. Bexar County made decisions about policy and practice which it implemented through its commissioner's court, its sheriff, its jail administrator, and/or through such widespread practice and/or custom that such practice and/or custom became the policy of Bexar County as it related to its jail. The Fifth Circuit Court of Appeals has made it clear that Plaintiff need not allege at the pleading stage the identity of chief policymaker(s). Any argument to the contrary would be made in bad faith.

### VIII

## Prior serious bodily injuries occurring at Bexar County Jail by Inmates and Detention Guards

There have been serious bodily injuries, some resulting in deaths of pre detention defendants awaiting court occurring in the Bexar County jail for years, and which were well known to the public, Bexar County Commissioners, the Bexar County Sheriff, and people working in the jail. The (TCJS) complies from only 2 years are quite astonishing to. Some of this knowledge is described below and elsewhere in this pleading. The Plaintiff's assault was contributed by one of the detention guards when he deliberately allowed inmates access to the Plaintiff's cell. Therefore assaults that occurred by detention officers on inmates are listed as similar incidents to this case.

1- February 3, 2025: Deputy David Mauricio Dominguez was arrested and terminated after allegedly provoking a fight with inmate Ruben Cameron at the Bexar County Jail. Dominquez reportedly attacked Cameron in the shower area causing injuries and attempted to conceal evidence. He faces criminal charges.

2- December 5, 2022: Derrick Ellison a mentally ill inmate, died after being assaulted at Bexar County Jail. A lawsuit was filed, alleging that the jail failed to protect him and provide adequate medical treatment. Ellison was injured and was pronounced dead hours after being Transported to the Hospital.

3- May 30, 2019: Inmate Shandrick Van Anthony Buckley,31,was charged with Murder after allegedly assaulting and killing a fellow Inmate. The Victim was found with severe facial and head injuries in their shared cell.

4- December 26, 2023: inmate Antoinne Micole Briggs 38, was charged with aggravated assault causing serious bodily after attacking a fellow inmate

5- August 14, 2024: inmate Anthony Chase McGruder, twenty-eight was charged with Murder following the death of fellow inmate Jose Barrera 62, MacGruder allegedly assaulted multiple inmates, including Barrera, whom he was seen striking with a sandal and later chocking with a sheet .Barrera was found dead in their shaded cell.

6- May 10, 2015: Inmate Kenneth Alan Day 30 was charged with aggravated assault after attacking fellow inmate Khanh Hoang. Day reportedly tackled Hoang, causing severe head trauma, a collapsed lung, and multiple broken bones. Medical staff had to remove a portion of Hoang's skull due to brain swelling.

7- January 23, 2023: Daniel Pentkowski, a Midland native, was arrested in San

Antonio and taken to Bexar County Adult Detention Center. According to a Federal Lawsuit, during his arrest he used excessive force, leading to significant injuries. While in custody, Pentkowski did not receive necessary medical care and was found deceased in his cell two days later.

8- August 23, 2017: Former Bexar County assaulted inmate Garrett Flores and was charged with official oppression.

9- Curtis Smith was killed by a fellow inmate in 2021 who used a sock and a bandana to choke and suffocate him in a holding cell .A lawsuit was filed. Bexar County paid $2.4 Million settlement.

10- Jemadrari Chinua Williams in 2018 claimed he was assaulted by other inmates with staff permission and later by a jail officer in the infirmary.

11- This conduct violates Plaintiff's rights under the Fourteenth Amendment's Due Process Clause, which protects pretrial detainees from deliberate indifference to

12- January 19, 2020, Robert Reed attacked another inmate causing injuries that required hospitalization.

13- January 31, 2022 Ernest Tavera and Brandon Lerma killed Vicent Garcia when they disabled their cell door and committed the murder at the Bexar County jail.

14- May 31, 2019 Alexander Wise was murdered by Shandwick Van Buckley while sharing a cell. Wise was former Aryan Brotherhood member and Buckley was African American.

15- August 30, 2024, John Perez, an inmate at the Bexar County jail, was stabbed numerous times by other inmates. And taken to the hospital.

16- August 15, 2024 Jose Barrera was killed by inmate McGruder in his cell.

17- December 2024, it was reported that a female detainee was sexually assaulted

when transferring her within the jail complex .Investigation is currently pending.

18- January 13, 2020:  Inmate Robert Reed assaulted another inmate who required hospital care .He was also under investigation for other assaults at the Bexar County jail.

19- Serious medical needs. See Kingsley v. Hendrickson, 576 U.S. 389 (2015); Darnell v. Pineiro, 849 F.3d 17 (2d Cir. 2017).

20- As a direct and proximate result of the Defendants' acts and omissions, Plaintiff suffered severe physical pain, emotional distress, permanent injury, and loss of bodily functions.

21- Plaintiff seeks compensatory damages, punitive damages against appropriate individual defendants, and all other relief deemed just and proper under 42 U.S.C. § 1983.

## IX

## REPORT FROM TEXAS COMMISION ON JAIL STANDARDS REGARDING THE BEXAR COUNTY JAIL

Listed below are the total assaults reported from Bexar County to TCJS from 2020 through 2025. Support for these totals is provided by the Serious Incident Reports by County provided by TCJS with definitions per category, attached as Exhibit A and incorporated by reference therein for all intents and purposes.

The summary of the totals is as follows:

A.  Assaults 7,819

B.  Serious Bodily Injuries 342

C.  Use of force resulting in bodily injuries 111 Bexar County has the second highest

counts of serious incident reports in the State of Texas[1].In January 2023, Bexar

County had 144 assaults with 11serious bodily injuries and 2 deaths in custody. In

February 2023 Bexar County had 158 assaults .In March 2023; Bexar County had

155 Assaults with 3 serious bodily injuries and 1 death. In custody. In April of

2023, Bexar County had 135 assaults. In May 2023, Bexar County had 150 assaults

with 2 uses of force resulting in bodily injury and 1 death in custody In July 2023,

Bexar County had 144 assaults with 1 use of force resulting bodily injury, and 2

deaths in custody.

## X

## SYSTEM AND OPERATIONAL DEFICIENCES

The fact that the Bexar County jail was effectively an operational mess for years a fact

known by the Bexar County officials, the public at large and was reported on for years by the news

media and was found to be not incompliance by the University Health System investigation back in

2020, and continuing through the date Plaintiff was seriously injured, led to the deliberate

indifferences to the detainee's constitutional rights resulting in many life threatening injuries and

death.

1. On August 15th, 2019: the opinion article indicates that the writer has been doing a lot of

   thinking about the problems at the Bexar County jail. The opinion/article points out that the

   Bexar County Sheriff's Office is a two-tiered system, one tier relating to law enforcement

   and the other to detention. Generally, elected sheriffs focus more on law enforcement than

   detention. Thus, the detention officers "are treated as lesser officers" as compared to law

---

[1]The serious incident reports are monthly reports required by law to be reported by each county in Texas that includes statistics on use of force, assaults, and death in the jail and death these reports are a matter of public record. These Statistics are just an example of the issues in the jail. Harris County is the only other county with more serious incident reports, and they are subject to numerous lawsuit sand FBI investigations, and the TCIS notices of non-compliance

enforcement counterparts. Regardless of the veracity and/or applicability of these opinions, which upon information and belief are true, the opinion piece/article indicates that problems at the Bexar County jail were well known likely long before August 2019.

2. On January 15, 2020, an article reported a criminal investigation of University Health System staff at Bexar County jail. This investigation was disclosed, at least in part, by Sheriff Javier Salazar. Sheriff Salazar said, "We have had deaths at the Bexar County Jail. My belief is that they were receiving less than stellar service at the Bexar County Jail. I find that unacceptable." Sheriff Salazar, in a September 4, 2020, letter wrote that University Health System staff working in the jail had shown a lack of cooperation when it came to giving the Bexar County Sheriff's Office potentially lifesaving information regarding detainees. Sheriff Salazar indicated that the jail needed to know when there was something life-threatening going on with a detainee to assure that the person is taken care of. Sheriff Salazar was apparently referencing a situation in which detainees would receive treatment, but medical personnel would not share information regarding the treatment and additional issues with the Sheriff's Office.

3. Upon information and belief, long before Sheriff Salazar announced a criminal investigation, he and the Bexar County Commissioners were fully aware of problems with detainees, such as the decedent, receiving appropriate medical care. Bexar County, whether through its sheriff's office or its county commissioners, cannot blame medical personnel Bexar County chose to fulfill its constitutional obligations to protect incarcerated detainees. Bexar County owed non-delegable duties to protect the decedent and others who are incarcerated.

4. A December 21, 2020: article addressed the Bexar County jail's high staffing turnover and excessive overtime. Upon information and belief, high turnover at the jail was due to a number of issues, all of which were in control of the Bexar County Commissioners and the

Bexar County sheriff. Upon information and belief, such issues included the failure to appropriately compensate jailers, requiring unwanted overtime, failing to assure full and complete staffing, and failing to appropriately manage those working at the jail. The article read in part that the "problems of high turnover and overtime have plagued the Bexar County Jail for more than a decade." Further, the article indicated that officials say that such concerns have finally "reached a critical mass in the wake of a state crackdown on jail standards and staffing challenges" (which at the time were posed by the pandemic).

5. A County Commissioner-elect, Trish DeBerry, indicated that the jail would be an issue and continue to be an issue until County chose to "dedicate time, energy, and resources to try to figure out what the problem is." The article noted that Bexar County had spent nearly $24 million on overtime at the jail in the prior four years, with $10 million of that amount for the prior year alone. County Judge Nelson Wolff said that Bexar County had "gone through this year after year after year." County Commissioner Tommy Calvert said, "It sounds like there's a real crisis in that detention center that we've got to better address."

6. The article cited Jeremy Payne, President of the Deputy Sheriff's Association of Bexar County, comparing the Bexar County Jail to a foreign "sweat shop." He cited a scathing survey of deputies working in the jail, which suggested a majority were dissatisfied and that many were overworked. The survey, conducted by two local mental health researchers of nearly 350 deputies, including 230 detention officers, cited compassion fatigue and burnout which could present higher risk-taking behavior in officers. Such risk-taking could be drug and/or alcohol abuse and/or domestic violence. It could also lead, upon information and belief, to a failure to fulfill duties in the jail, such as appropriately observing detainees and/or providing timely medical care. The article also indicated that there were 250 open positions for jailers at the jail.

7.  An October 18, 2021, article detailed the plight of Cody Demond Felonry, who was a young man experiencing homelessness and mental health issues. He was arrested and incarcerated in the Bexar County Jail. He was then, according to the article, "lost in the system." The court order for his release was sent to, apparently, Bexar County jailers. "But nothing happened." Even though he should have been released and had accrued 563 days of incarceration, he was not released that day, or even the next. Ultimately, he served five months longer than he should have in the Bexar County jail. It was only discovered that he was being incarcerated against his rights when there was a review of cases by the Bexar County Sheriff's Office. This was yet another symptom of the apparent seemingly substantive lack of organization and competence in the Bexar County jail. If Bexar County were unable to even determine whether it could lawfully incarcerate those in its care, it likewise was unable to appropriately provide medical care and/or observe and check on detainees.

8.  An October 19, 2021: article entitled "Sheriff Salazar Spars with Bexar County Commissioners over Consulting Firms" shows the significantly low level of commitment of Bexar County officials to assure that its jail was run appropriately. Bexar County Commissioner's Court approved an agreement with a firm in Florida, American Correctional Consultants, at a "contentious meeting." The cost was not to exceed $20,000.00. This was apparently to be a secondary, if not competing, inspection of the jail with regard to another firm which Sheriff Salazar indicated he would retain to conduct an inspection and submit a report. Sheriff Salazar indicated that he retained jail consulting firm Detain, Inc. to conduct an inspection and submit a report separate from the County's retained contractor. He indicated at the meeting that he would use $49,000.00 in asset forfeiture funds to pay Detainee's bills. Regardless, even adding the two amounts together, the county's decision to

spend only roughly $69,000.00 to attempt to cure issues in a jail with a budget of millions of dollars was woefully inadequate. It was in effect attempting to put out a fire with a water pistol.

9.  In May 2022: Bexar County Sheriff Javier Salazar said in a press conference that "a Bexar County Sheriff's Office deputy was arrested after attempting to smuggle marijuana and synthetic marijuana into the Bexar County Jail." Kolbe A. Counts Ramirez, 21 years old, was arrested on three charges, which included possession of a controlled substance and possession of marijuana. Deputy Ramirez was the sixth Bexar County Sheriff's Office deputy arrested that year.

10. In May 2022, a grand jury returned indictments for seven people accused of smuggling drugs into the Bexar County jail. There were a number of charges against each such person, and indictments indicate that the occurrences were between February 16, 2019, and May 25, 2019. Thus, as described elsewhere in this pleading, Bexar County had plenty of time prior to the plaintiff's entry into the jail to address its apparent significant issues.

11. An article on July 17, 2022, highlighted other issues in Bexar County jail. The article referred to a recent dispute between the Deputy Sheriff's Union and Bexar County officials regarding locks in jail. The dispute involved whether locks were broken or simply needed to be replaced. Apparently, as a result of the dispute, Bexar County Commissioners approved roughly $500,000 to replace almost 400 locks in the Bexar County Adult Detention Center. Leadership at the Deputy Sheriff's Association of Bexar County welcomed the news but said that it "barely scratches the surface" of challenges facing both jailers and detainees at the 30-year-old jail.

12. Moreover, the Association representative also mentioned a staffing shortage. The article indicated that "hundreds of positions remain unfilled." Further, Bexar County has required

mandatory overtime. Some jailers were upset about being forced to work additional shifts, which included concerns about exhaustion and safety. They felt that there was no immediate relief in sight. Sheriff Salazar, who is responsible to set policy, practice, and custom in the jail, said, "It irks the crap out of me that things move at the speed of government around here." Ronald Tooke, president of the Deputy Sheriff's union, said that Bexar County was losing jailers to other law enforcement agencies and industries that pay better and are safer because of the "toxic burnout" that comes from working in the Bexar County jail. He also indicated that jailers often have to wait weeks and months before being paid for mandatory overtime because Bexar County Commissioners must approve overtime expenditures. This certainly led to a decrease in morale and, consequently, a decrease in safety in the jail.

13. Mr. Tooke also said, "Our jail is in disrepair due to the lack of preventive maintenance creating an even bigger security issue." Sheriff Salazar, who must rely on Bexar County Commissioners for funding, indicated in the article that he needed $150 million to update the Bexar County Jail.

14. A July 28, 2022: article described additional issues with the Bexar County jail, specifically related to what the article describes as "poor maintenance practices that have produced intolerable working conditions, which are causing deputies to quit in droves." Ronald Tooke said, "If I had to go to a dump and work in that place every day, it would probably wear me down too." Mr. Tooke heard complaints on a daily basis and saw them firsthand from his time working in what the article refers to as a 40-year-old jail. Mr. Tooke further said that when things are as bad as he described in the jail, "It affects everybody's morale, their mental health, their health." Tooke also said, "It's just an overall demoralizing workplace." He said that the jail needs a major overhaul and listed a number of complaints, including faulty air conditioning, unusable jail cells, water leaks, sewage leaks, and malfunctioning

surveillance cameras.

15. In or about August 2022: former Bexar County Sheriff's Office Deputy Mario Sepulveda, 21 years of age, was arrested and charged with abuse of official capacity and possession of a controlled substance inside a correctional facility. An arrest warrant indicated that on June 21, 2022, a source tipped off authorities about narcotics entering the Bexar County jail. The source indicated that Mr. Sepulveda was sneaking drugs into the 2A unit for a male detainee. The drugs were allegedly supplied by the detainee's girlfriend and were being purchased via Cash App. Deputies found methamphetamine and synthetic marijuana in a cell and further discovered that Mr. Sepulveda and the detainee's girlfriend had more than 100 telephone interactions.

16. On October 5, 2022, an article cited sections of a report by Detain Inc. about Bexar County jail. The Bexar County Sheriff's Office retained detain Inc. to conduct an inspection of the jail, at a cost of roughly $50,000. The report read in part, "The Bexar County Jail faces significant detention officer staffing shortages along with significant mandatory overtime in critical inmate supervision roles." The report also recommended pay increases for entry-level positions of 15% to 20% and also raises for more senior jail staff. The article indicated that the report "provides evidence that Bexar County correctional officer pay is far below all other major Texas counties." Detain Inc., also recommended moving from a 40-hour work week to a six-day 48-hour work week to "limit the chronic overtime paid to officers [according to the article]."

17. A November 29, 2022: news story references portions of a report from outside agency American Jail Consultants regarding the Bexar County jail. The report touched on issues facing the Bexar County jail for years, including low staff morale, an increase in overtime expenses, and a high inmate population. Among other things, the report indicated that Bexar

County's starting salary for jailers' lags behind other major cities in Texas including Austin, Dallas, and Houston. The agreement to conduct the study and provide the report was signed in October 2021.

18. A January 31, 2023: news story indicates that a purported class action lawsuit was filed against Bexar County for keeping people in custody after the law required their release. The "over detention" lawsuit arose as a result of an inmate allegedly being held an additional three days past the date on which he was to be released. The lawsuit alleges that 15,000 people are released on bond from Bexar County jail each year, and that the County and the Sheriff's Office have been aware of systemic problems and delays in processing bail payments as well as the widespread problem of resulting over detention. The lawsuit further alleged that the Bexar County Sheriff's Office used a batch system of processing bonded prisoners, whereby prisoners would be placed into a cell after they were bonded but not released until the cell reached a specific detainee count threshold

19. An April 20, 2023: article indicates that nearly three-hundred Bexar County jail inmates were "in limbo" due to delays in transferring them to a state mental hospital. There were, at the time, 279 inmates sitting in the Bexar County jail waiting to be transferred to a state hospital to begin competency restoration care. Competency restoration care is necessary when detainees are found incompetent to stand trial. As a local state district judge acknowledged, a jail cell is "probably not the best place to put an individual who is waiting competency restoration." Bexar County apparently did not have a competency restoration program in place, although other Texas county jails do have such a program. Regardless, the continued incarceration of severely mentally ill people, and the resources it taxed, affected care and observation of other detainees in the jail.

XI

**TCJS Violations Records Demonstrating Bexar County Practices and/or Customs**

1. TCJS reports and documents regarding inspections of the County's jail further demonstrate these and other policies, practices, and/or customs which, when applied individually and/or working together, caused, were proximate causes of, producing causes of, and/or moving forces behind damages (including death) asserted in this pleading. The culmination of the failures of the existing or non-existing policies of the Bexar County jail reflects the deliberate indifference of the Bexar County jail which led to the serious bodily injuries sustained by Mr. Martinez's. The following incidents reflect a pattern of conduct

2. The TCJS conducted an inspection of the Bexar County jail from February 24 through 27, 2014. Among other things, the TCJS found that a jailer did not even have a temporary jailer's license. Upon information and belief, Bexar County may have frequently used jailers who did not have permanent jailer's licenses, but instead only temporary jailer's licenses. A temporary jailer's license requires no education and no training. See Piotrowski v. City of Houston, 237 F. 3d 567, 579 (5th Cir. 2001). A City's training of officers can lead to liability. Thus, by way of example, a person could be working at a convenience store one day, having never worked in a jail, and then the next day apply for and begin working in the Bexar County jail.

3. The TCJS also found during the same inspection that a magistrate was not being notified when a CCQ resulted in an exact match, confirmed match, or possible match. It is vitally important to notify a magistrate, someone outside the jail who can act, when a detainee record indicates that the detainee may have received mental health care before incarceration. This is the purpose of conducting a CCQ.

4. The TCJS inspected the Bexar County jail again on March 29, 2018. As a result of the

inspection, Bexar County was found to be noncompliant with TCJS minimum standards. The TCJS urged Bexar County to give areas of noncompliance its serious and immediate consideration and to promptly initiate and complete appropriate corrective measures. The TCJS instructed Bexar County that failure to initiate and complete corrective measures following receipt of the notice of noncompliance could result in the issuance of a remedial order.

5. TCJS noted, when viewing the size of the exercise area in the Bexar County jail that more detainees were being allowed to attend recreation than the space would allow. No more than one detainee could be placed in an exercise area of that size, which was 291 square feet, at a time.

6. Moreover, the TCJS determined that irregular and regular searches for contraband were not conducted between April and August of 2017 in Unit CC. This was a housing location from which three detainees would eventually escape. Detainees were throwing handmade lines to the ground outside the jail to bring objects into the jail. The failure to conduct contraband checks confirmed the general indifference to detainee conditions.

7. The TCJS inspected the Bexar County jail again from February 19 through 22, 2019. Once again, the TCJS found the Bexar County jail to be noncompliant. Once again, in writing, the TCJS notified Bexar County that it needed to give areas of noncompliance its serious and immediate consideration and to promptly initiate and complete appropriate corrective measures. TCJS once again warned Bexar County that its failure to initiate and complete corrective measures following receipt of the notice of noncompliance could result in issuance of a remedial order. The Bexar County sheriff, jail administrator, and a Bexar County Commissioner's Court representative signed a document acknowledging receipt of information related to issuance of the notice of non-compliance. Upon information and

belief, the Bexar County sheriff, jail administrator, and a County Commissioner's Court representative always receives copies of TCJS inspection and other documents regarding Bexar County jails promptly after such documents are created.

8. TCJS found a number of violations of bare minimum standards in its February 2019 inspection. TCJS determined that Bexar County had employed and authorized civilian

• Assign employees to perform detainee releasing officer duties when minimum jail standards specify that releasing officers must be appropriately licensed personnel. Further, Bexar County jail staff routinely exceeded custody reassessments as required by TCJS minimum standards. One file even exceeded the 90- day limit by 27 days.

9. Moreover, Bexar County chose to employ unauthorized civilian employees to perform the duties of health personnel or trained book-in officers, thus further violating TCJS minimum jail standards. Bexar County was also unable to provide training records to confirm that detention officers had received suicide prevention training in accordance with approved operational plans. Bexar County jail observation logs also indicated that jail staff exceeded the required 15-minute face-to-face observations of detainees on a continual basis. Further, for those detainees requiring 60-minute face-to-face observations, observations were not conducted timely, on a continual basis, exceeding the 60-minute requirement by as little as just one minute and by as many as up to 126 minutes.

10. Further, TCJS determined during that inspection that the Bexar County jail administration had employed unauthorized civilian employees to perform duties of licensed jailers. The civilian employees were not licensed by the Texas Commission on Law Enforcement (TCOLE) as required by law. TCJS also determined that Bexar County jail administration had employed unauthorized civilian employees to perform duties of bailiff or peace officers in the security perimeter of court holding cells, rather than being licensed as jailers by

TCOLE as required by law. Finally, the TCJS inspection team was unable to verify, through Bexar County documentation, that recreation was being offered to inmates at least three days a week, for one hour each time, as required by minimum jail standards.

11. The Bexar County jail's problems continued. Bexar County once again failed a TCJS inspection, such an inspection occurring on May 8, 2019. Once again, TCJS had to remind Bexar County to give areas of noncompliance its serious and immediate consideration and promptly initiate and complete appropriate corrective measures. Bexar County was once again warned, apparently against the backdrop of it's failing to remedy issues, that its failure to initiate and complete corrective measures could result in the issuance of a remedial order. Bexar County's continued failure to appropriately monitor inmates, when such observations are designed not only to protect inmates but staff as well, was documented in the TCJS special inspection report. After reviewing documentation provided by Bexar County Jail's administration, TCJS determined that Bexar County Jail staff exceeded the 60-minute face-to-face observations of detainees by as many as 119 minutes. Thus, detainees could go unmonitored for as long as three hours. Bexar County's continued custom and practice of failing to properly observe detainees would lead to serious injury and death.

12. Bexar County's continued problems, of its own making, were documented in a report resulting from a TCJS inspection from January 27 through 30, 2020. When walking through the jail, the TCJS inspection team saw several detainees housed in the transport hub pending housing. Three of the detainees had been in the cell for longer than the 48-hour maximum time period. This is a minimum jail standard designed to avoid injury and/or death to those held in such a holding cell. As a result, Bexar County jail shift supervisors had to email the lead TCJS inspector, on a daily basis, a list of all inmates housed in transport hub holding cells and the hours that they were initially booked, for the following 30 to 90 days, for TCJS

review. TCJS also required Bexar County jail administration to assign a classification officer to the transport hub to ensure that inmates were housed in a timely manner.

13. Moreover, during the same inspection, while reviewing suicide prevention training, the TCJS inspection team determined that a portion of jail staff were past due on annual training. The TCJS pointed out that suicide prevention training was already an issue at the 2019 annual inspection. Thus, Bexar County was giving short shrift to requirements imposed on it by TCJS pursuant to minimum jail standards.

14. Further, as a matter of happenstance, while the inspection team was walking through the jail, it saw that detainee Trevino was in a holding cell in the transport hub. When interviewing detainee Trevino, the inspection team learned that he was on occasion not receiving medication and wound care in accordance with physician's orders while he was in the holding cell. Likely due to Bexar County's continued issues over a lengthy of time, the TCJS wrote, "The lead inspector will follow up with unannounced visits to review documentation and interview staff and inmates to ensure that all doctor orders are followed as required by minimum jail standards."

15. Further, while walking through the facility, the TCJS inspection team saw five females and one male in holding cells in the transport hub. The inspection team saw all such detainees being restrained in leg irons. Oddly, jail staff did not identify any of the detainees as being combative or indicating self-harm tendencies. Further, unbelievably, TCJS determined that the detainees had been in holding cells for up to four days in leg irons. TCJS wrote as a result, "The administration will implement a plan of action, within seven days, to ensure inmates are not placed in holding cells with restraints unless a direct threat to safety and security exists. The plan of action will be emailed to the lead inspector for review."

16. Further, during that inspection, and as further evidence of the general disregard for the health

and safety of detainees, when walking through the jail, the inspection team saw sanitation issues needing to be addressed in both jail kitchens. These areas included trays, sporks, dirty cooking racks from previous meals, and dirty cookware. There were fruit flies and gnats in several areas throughout the main jail facility. TCJS required Bexar County jail administration to develop a plan of action, within 30 days, to address the sanitation issues. Further, TCJS wrote, "If vast improvement is not observed, within 60 days, on the areas identified to include the rate of work order completion, the facility shall be placed in non-compliance."

17. Further, during that inspection, while walking through the facility, the inspection team "observed numerous maintenance issues needing addressing throughout the main jail facility and annex." Significant areas included the kitchen, uneven flooring and exposed concrete, unsecured metal paneling at junctions between floor and walls, a ceiling leak, several cells missing or having loose floor tiles (which were a safety and security concern), metal windowsills rusting out on portions of recreation yards, numerous tamper-resistant screws missing, lights out, ceiling tiles damaged and missing, and apparent mold on the ceilings of janitor closets. Further, showers needed cleaning to remove soap scum buildup and mildew in the annex shower areas, and there were plumbing issues. Maintenance and administration identified thirty-six cells which were inoperable due to maintenance issues. Maintenance staff also produced approximately seven hundred open work orders. The TCJS required jail administration, in conjunction with facilities maintenance administration, to develop a plan of action within 30 days, to include begin and end dates for each project.

18. Finally, during that inspection, while reviewing inmate grievances, the TCJS inspection team saw that medical grievances were being answered directly by the medical department. Medical staff responding directly did not provide a response from an independent arbitrator,

nor has nonbiased staff, in accordance with Bexar County approved operational plan.

19. TCJS inspected the Bexar County jail again from March 22 through 25, 2021. TCJS inspectors, while observing control room officers in the housing areas of the main jail, they found that on occasion an officer would leave the control room to complete face-to-face observations in a cell and thus leave intercoms unattended. It is important to have intercoms attended, as that is the primary way in which any detainee in a cell could notify someone if medical or other assistance is needed. Jail administration confirmed that the intercoms in the main jail could not be transferred to central control. The TCJS inspection team recommended that jail administration implement a plan of action to ensure that inmates always had two-way communication with jailers as required by TCJS minimum jail standards.

20. Further, while conducting a fire drill at the annex, the lead inspector saw that the controller and officer did not announce the emergency code until nearly two minutes into the drill. That lead inspector also saw control room officers continued to operate doors for all other normal traffic, which appeared to slow down the response of the CERT team. The inspection team recommended that jail administration implement a plan of action to ensure that control room officers can consistently prioritize access of the responding CERT team to emergencies and that all other normal traffic is ceased until the emergency is cleared by the control room officer. The inspection team also recommended that once a plan of action was in place, the administration provide training for all jail staff. TCJS requested a jail administration email to the inspector with a plan of action and roster of training within 30 days. The medical reports reflect that Plaintiff was full code and trauma blue and resuscitation was necessary in order to keep him alive.

## XII

### Bexar County Policies, Practices, and Customs

1. Plaintiff list beneath this heading, in addition to others referenced or described through factual allegations in this pleading, some specific County policies, practices, and/or customs which Plaintiffs allege, at times upon information and belief, caused, proximately caused, were producing causes of, and/or were moving forces behind all damages referenced in this pleading, including the Plaintiff's suffering and injuries. Thus, the County is liable for all such damage. These policies, practices, and/or customs worked individually, or in the alternative together, to cause the Plaintiff's damage asserted in this pleading. Plaintiffs plead conditions of confinement claims arising from policies, practices, and/or customs. Deliberate indifference is not an element of, or a requirement to prove, conditions of confinement claims. In the alternative, Plaintiff pleads episodic act and/or omission claims arising from policies, practices, and/or customs. Plaintiff plead, to the extent necessary, that deliberate indifference underlying episodic act and/or omission claims, upon information and belief, occurred with regard to relevant actors. Regardless, the Plaintiff asks that the court apply the correct law to the facts pled, as required by Supreme Court precedent.

2. One or more courts have recognized that it is exceedingly rare that a plaintiff will have access to or personal knowledge of specific details regarding the existence or absence of a county defendant's internal policies or training procedures before discovery. Thus, at the pleading stage, a plaintiff is merely required to put a governmental entity on fair notice of the grounds for which it is being sued. Federal courts must rely on summary judgment to

weed out unmeritorious claims. Plaintiffs thus plead the following specific policies, practices, and customs which give rise to conditions of confinement claims, or in the alternative episodic act and/or omission claims, in this portion of the complaint upon information and belief:

a. First, the County failed to monitor or in the alternative had inadequate monitoring of detainees.

b. Second, upon information and belief, County failed to reprimand and/or take remedial action against employees and/or agents as a result of action and/or inaction related to the Plaintiff/claimant's suffering, thus confirming that the policies, practices, and/or customs which led to such suffering and injuries were in fact de facto County policies;

c. Third, County, in the alternative, while monitoring detainees, failed to secure the holding cell doors from access by inmates and or opened the holding cell doors in a negligence manner ,thus allowing the assault by inmates to take place;

d. Fourth, the County housed together in a holding cell detainees who were likely to be violent toward each other based on information known about them;

e. Fifth, the County housed together in a holding cell, in street clothes, detainees whose risk level had not yet been through the classification process based on history, mental status, and violent tendencies. County classification procedures and/or practices apparently did not account for serious risk of harm to detainees and improperly housed detainees together;

f. Sixth, the County chose not to sufficiently staff its jail;

g. Seventh, a Bexar County Adult Detention Center, the defector policy regarding supervision and control of inmates, is apparently contrary to TCJS minimum standards, visual observations were to be conducted on an irregular basis. A TCJS minimum

standard, and every known jail standard, requires visual observations when observing detainees in their cells. Moreover, that written policy required "actual opening of the cell doors . . . on an irregular basis."

h.  Tenth, the County had longstanding and well-known policies, practices, and customs regarding employment, employee compensation, employee benefits, and employee working conditions which led to long hours and general jail employee dissatisfaction, malaise, and ambivalence regarding detainee needs and monitoring.

i.  Twelfth, the County decided not to have cameras mounted in holding cells. Cameras in holding cells would allow continuous observation and, in the case of the Plaintiff, the ability to intervene ;

j.  Thirteen, upon information and belief, the County failed to train its employees on various matters including proper cell checks, classification of detainees, risk of detainee assaults, and/or the necessity of promptly responding to detainee safety requests.

k.  Failing to train and instruct its employees on proper evaluation on proper evaluation of detainees for visible injuries and the potential implications of those injuries;

l.  Permitting, encouraging, and approving detainee's assaults and officer unnecessary use of force in the jail;

m.  And resorting to improper observation and monitoring of detainees;

## XIII

### Causes of Action

A.  **Fourteenth Amendment Due Process Claims Under 42 U.S.C. § 1983: and the Eight Amendment United States Constitution and the Fourteenth Due Process Clause**

**B.** In ***Waco V. Hester, 805 745S.W. 2nd, 807,*** held that a prisoner' as right under the eight amendment to be reasonably protected from violence or sexual assault by fellow inmates.

(1) Plaintiff incorporates each of the paragraphs as if fully stated herein.

(2) The County violated Mr. Martinez's constitutional rights, resulting in his serious injuries in violation of the Fourteenth and the Eight Amendment of the United States Constitution.

(3) Plaintiff has suffered serious injuries caused by the Bexar County detention pervasive acts and omissions which were sufficiently extended and pervasive to constitute the polices and conditions of the Bexar County jail

(4) Bexar county owed a duty or voluntarily assumed the duty to the general public including the Plaintiff to hire safe, competent officers, to implement and enforce safety policies, to train, instruct, monitor, and supervise its employees and to take actions to control their officers to prevent injuries to citizens, Plaintiff brings claims for Bexar county's deliberate failure to train Supervise, hire, control, retain, and discipline their employees who resulted in the violation of Mr. Martinez's constitutional rights.

(5) As shown above, Bexar county and its policymaker, the sheriff, have been aware of the jail's rampant culture of violence ,lack of conducting proper medical attention ,evaluations, lack of monitoring and proper observations of detainees, and encouraging assaults by detainees and guards, The Bexar county policies and failure to train are so prevalent and the consequences well known that Bexar County knew that their failure to train on this issues would lead to the deprivation of the constitutional rights of its citizens, However the Bexar County detention center was deliberate indifferent to need for more better training and that indifference was the moving force in Mr. Martinez's injuries.

(6) The County failed to act despite awareness of these risks. No increased staffing, restraining ,or policy revision followed .This shows a conscious disregard of consequences,

seem to have been the norm rather than advancement .The County still showing assaults deaths inmates murders as of today ,confirms that the county continues to show a conscious disregard of the conditions of the jail. The case of *Gates v. Dep't of Protective & Regulatory Sers.,537 F.3d 404,437(5ᵗʰ Cir.2008)*A widespread practice of the unconstitutional custom as herein stated is the moving force behind plaintiff's injuries and violation of his constitutional rights as is state in *Burgev. Parish of St Tammany 336 F3d 363, 370,(5ᵗʰ cir.2003).*

## XIV

### Remedies for Constitutional Rights Violations

The Plaintiff seeks, for causes of action asserted in this complaint, all remedies, and damages available pursuant to Texas and federal law, under the civil rights claims pursuant to 42 U.S.C. section 1983.,the Eight Amendment ,and the Texas Constitution, common law, and all related and/or supporting case law. The plaintiff incorporates this remedies section into all sections in his complaint asserting cause(s) of action.

## XV

### Cause of Action Against Bexar County Under 42 U.S.C. Section 1983 for Violation of Constitutional Rights

1.   In the alternative, without waiving any other causes of action pled herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein (including all allegations in the "Factual Allegations" section above) to the extent they are not inconsistent with the cause of action pled here, Defendant Bexar County is liable to Plaintiff , pursuant to 42

U.S.C. section 1983, for violating the plaintiffs' constitutional rights including but not necessarily limited to the rights to receive reasonable medical health care, to be protected, and/or not to be punished as a pretrial detainee. These rights are guaranteed by at least the Fourteenth Amendment and the eight amendments to the United States Constitution. Pretrial detainees are entitled to be protected and not to be punished at all, since they have not been convicted of any alleged crime resulting in their incarceration.

2. County employees and agents acted or failed to act under the color of state law at all relevant times. County's the defector policies, practices, and/or customs were moving forces behind and caused, were producing causes of, and/or were proximate causes of the Plaintiff's suffering, damage, and personal injuries, and all damages suffered by Plaintiff .

3. Controlling Fifth Circuit Court of Appeals precedent has made it clear that Plaintiffs have no obligation to identify the appropriate chief policymaker(s) at the stage of the pleadings. Any argument to the contrary would be made in bad faith. Nevertheless, out of an abundance of caution, the County's sheriff was County's relevant chief policymaker over matters at issue in this case. Moreover, in addition, and in the alternative, the County's jail administrator was the relevant policymaker

4. The plaintiff seeks, for *42 U.S.C. section 1983* constitutional violations, the following:

    a. Past mental anguish and emotional distress suffered resulting from and caused by the Plaintiff's injuries by the assault herein.

    b. Future mental anguish and emotional distress suffered resulting from and caused

by the plaintiff's injuries by the assault.

c.  Past and future permanent personal injuries as a result of plaintiff's assault

d.  past and future medical expenses.

e.  Moreover, Plaintiffs seek reasonable and necessary attorneys' fees available pursuant to 42 U.S.C. sections 1983 and 1988.


## XVI

## Concluding Allegations and Prayer

### a.  Conditions Precedent

All conditions precedent to the assertion of all claims herein have occurred

Plaintiff gave notice of claim pursuant to the Texas Tort claim.

### b.  Conclusion

The defendant's failure to implement adequate policies, training, or supervision created an environment where the plaintiff was at a substantial risk of harm. This failure constitutes deliberate indifference to the Plaintiff's Eighth and Fourteenth Amendment rights and establishes liability under Monell. Despite actual or constructive knowledge of these risks ----through grievances, incident reports and reports from the Texas Commission on Jail standards----Bexar County failed to implement policies or take remedial action to prevent further harm. None meaningful changes were made to classification, staffing, or oversight practices.

This deliberate indifference to the known risk of harm to inmates and the Plaintiff satisfies the Monell standard for municipal liability. The systemic failures of Bexar County Jail were the moving force behind plaintiff's injuries. The County's

policies, custom, and failures to train or supervise were not merely negligent but amounted to deliberate indifference under federal constitutional standards.

Therefore, Plaintiff respectfully asserts that Bexar County is liable under Monell and seeks to hold the County accountable for the resulting violations of Plaintiff are Eight and Fourteenth Amendment rights.

## XVII

### Use of Documents at Trial or Trial or Pretrial Proceedings

Plaintiffs intend to use at one or more pretrial proceedings and/or at trial all documents Produced by the Defendant in response to written discovery requests, with initial disclosures (and any supplement or amendments to same), and in response to the Public Information Act. Request (s).

### A. Jury Demand

  a.  (1) Plaintiffs demand a jury trial on all issues which may be tried by a jury pursuant to Federal Rule of Civil Procedure 38(b).Plaintiff will tender the appropriate fee.

### B. Prayer

For this reason, Plaintiffs ask that Defendant be cited to appear and answer, and that plaintiff have judgment against Bexar County for an amount of SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750.000.00) thousand /dollars for the injuries of the plaintiff as referenced above, reasonable, and necessary attorneys' fees through trial and any appeals and other appellate proceedings, pursuant 42 U.S.C. sections 1983 and 1988, and.

a) Court costs and all other recoverable costs.

b) Prejudgment and post judgment interest at the highest allowable rates, and

c) All other relief, legal and equitable, general, and special, to which Plaintiffs is entitled.

Respectfully Submitted

By: *//S// BLAS H DELGADO*
    Blas H. Delgado
    Attorney-in-Charge
    Texas Bar No. 05725700
    E-mail: delgadoblas@yahoo.com
    2806 Fredericksburg Rd, Suite 116
    San Antonio, Texas 78201
    Tel: (210) 227- 4186
    Fax: (210) 941-0660